Brent P. Ray (*pro hac vice* forthcoming)
Andrew J. Chinsky (*pro hac vice* forthcoming)
KING & SPALDING LLP
353 N. Clark Street, 12th Floor
Chicago, Illinois 60654
T: +1 312 995 6333
F: +1 312 995 6330
Email: bray@kslaw.com
       achinsky@kslaw.com

Daniel C. Barr (Bar No. 010149)
Janet M. Howe (Bar No. 034615)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
T: +1 602 351 8085
F: +1 602 648 7085
Email: dbarr@perkinscoie.com
       jhowe@perkinscoie.com

*Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| D.H., by and through his mother, Janice Hennessy-Waller; and John Doe, by his guardian and next friend, Susan Doe, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>Jami Snyder, Director of the Arizona Health Care Cost Containment System, in her official capacity,<br><br>    Defendant. | No.<br><br>**DECLARATION OF TAMAR REED IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

37070399.v2

I, Tamar Reed, hereby declare as follows:

1. I am a child and family therapist at Casa de los Niños in Tucson, Arizona, and am currently treating D.H., a plaintiff in the above-titled action.

2. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction.

Education and Experience

3. I received a master's degree of Science in Counseling and Clinical Mental Health Counseling from Prescott College.

4. I am a Licensed Professional Counselor. I work exclusively with preteens, teens, and young adults. I specialize in working with LGBT young people as well as clients experiencing suicidal ideation, self-harming behaviors, and complex trauma.

Assessment of D.H.

5. I started seeing D.H. in October 2016. He was referred to me by another practitioner because of my expertise in working with transgender young people.

6. At the time I started seeing D.H. he had pervasive anxiety, chronic suicidal ideations and attempts, and related self-harm issues (including cutting, burning and hair-pulling). I also understood that he had recently come out as transgender.

7. My initial impressions of D.H. was that he was very dysregulated, highly anxious and defiant with his mother. I understood that he was refusing to go to school, and that he had also been hospitalized in the past. D.H. was diagnosed with gender dysphoria by his treating pediatrician, a diagnosis that I confirmed.

8. My treatment of D.H. focused on gender dysphoria, anxiety, trauma and oppositional disorder. I treated his gender dysphoria with behavioral therapy, identity and values regulation and attempting to improve his relationship with his mother. I met with D.H. every week for numerous months. Over that time, D.H. began his transition and his mental health improved significantly. The mental-health benefits of D.H.'s transition gave him the emotional energy to develop the tools he needed to continue working on improving his mental health.

37070399.v2

9. When D.H. started hormone treatment in November 2017, I saw a dramatic shift in his well-being. His chronic behaviors subsided significantly, but certain behaviors persisted. When his urges came back to engage in self-harm, they were specifically triggered by the sight of his chest. For example, when he was in the shower, and had no opportunity to cover himself.

10. The topic of surgery came up early in my conversations with D.H. Although the determination of whether surgery is medically necessary to treat a patient's gender dysphoria is made by a medical professional, I am consulted in this process that treatment has a distinct mental health component Based on my professional experience working with transgender young people and my assessment of D.H., he met the criteria for a referral for male chest reconstruction surgery under WPATH standards as early as April 2019. He is fully adjusted to living as male and exhibits the psychological maturity and thoughtfulness necessary to provide independent and informed consent to the procedure.

11. After a break of several months in mid-2019, D.H. self-referred himself back to me for further treatment in October 2019, ready to tackle other issues related to his gender dysphoria. Since then, I have seen D.H. weekly. Our appointments became less frequent at the beginning of the COVID-19 pandemic, but soon thereafter D.H. requested to return to our regular weekly appointment, which I have conduct via telehealth.

12. Not being able to undergo male chest reconstruction surgery would be a huge setback for D.H., who has a lot of potential. D.H.'s chest would continue to be a persistent obstacle to him being comfortable in his own body. It would prevent him from developing healthy levels of self-esteem and confidence, which can have far-reaching implications for his social and academic functioning as well as keeping him from participating in dance, an activity that had a significant positive effect in his life.

13. Without male chest reconstruction surgery, D.H.'s significant dysphoria will also exacerbate his anxiety and psychological distress caused by prior trauma. The longer his dysphoria and psychological distress persist, the more difficult it will be to treat those underlying mental health conditions and trauma.

14. Equally concerning is that as D.H.'s psychological distress becomes more emotionally taxing, his coping mechanism are likely to start failing him, diminishing his ability to resist returning to negative coping behaviors such as self-harm. D.H.'s prior hospitalizations further increase the likelihood that his mental health could significantly deteriorate if he is unable to get male chest reconstruction surgery. Any decline in D.H.'s mental health is particularly concerning given his history of suicidal ideation. This makes D.H.'s need for surgery immediate.

I declare under penalty of perjury pursuant to the laws of the State of Arizona that the foregoing is true and correct.

Executed this 6th day of August, 2020 at Tucson, Arizona.

*Tamar Reed, MS, LPC BHP*
Tamar Reed

---

DECLARATION OF TAMAR REED IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
-3-