Brent P. Ray (Admitted *pro hac vice*)
Andrew J. Chinsky (Admitted *pro hac vice*)
KING & SPALDING LLP
353 N. Clark Street, 12th Floor
Chicago, Illinois 60654
T: +1 312 995 6333
F: +1 312 995 6330
Email: bray@kslaw.com
       achinsky@kslaw.com

Daniel C. Barr (Bar No. 010149)
Janet M. Howe (Bar No. 034615)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
T: +1 602 351 8085
F: +1 602 648 7085
Email: dbarr@perkinscoie.com
       jhowe@perkinscoie.com

*Counsel for Plaintiffs and the Class*
(Additional Counsel on Signature Page)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D.H., by and through his mother, Janice Hennessy-Waller; and John Doe, by his guardian and next friend, Susan Doe, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>Jami Snyder, Director of the Arizona Health Care Cost Containment System, in her official capacity,<br><br>    Defendant. | No. 4:20-cv-335-SHR<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS D.H. AND JOHN DOE'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>*****ORAL ARGUMENT REQUESTED*** |

## I. INTRODUCTION

D.H.'s and John's treating providers are clear and consistent: delaying male chest reconstruction surgery any further will cause irreparable damage to their health and wellbeing, putting them at risk for serious negative mental health consequences. D.H. and John meet the eligibility requirements for male chest reconstruction surgery under the prevailing standards of care, and their providers have determined that it is medically necessary for them. Yet, AHCCCS's categorical exclusion singles out gender-confirmation surgeries for differential treatment. That exclusion violates the Medicaid Act and the Affordable Care Act (ACA), and serves no legitimate, much less important, state interest.

Defendant's opposition relies on the opinions of two doctors who have little, if any, experience treating transgender adolescents and whose views contradict the well-established standards of care for treating gender dysphoria in minors. Even Defendant significantly disagrees with their opinions; AHCCCS covers services, including hormone therapy, that Drs. Laidlaw and Levine believe are not safe and effective. *See, e.g.*, Michael Laidlaw, *The Pediatric Endocrine Society's Statement on Puberty Blockers Isn't Just Deceptive. It's Dangerous*, Public Discourse (2020), *available at*, https://www.thepublicdiscourse.com/2020/01/59422/ (last visited Oct. 25, 2020).

Although Defendant attempts to position Drs. Laidlaw and Levine as one side of a reasoned scientific debate, the opinions they express have no credible foundation or support. The views proffered by Drs. Laidlaw and Levine contradict the well-established standards of care developed by WPATH and endorsed by the major medical associations in the United States, including the American Medical Association, American Academy of Pediatrics, American Psychiatric Association, and Endocrine Society, among many others. For that reason, other federal courts have declined to rely on Dr. Levine's opinions. *Hecox v. Little*, No. 1:20-CV-00184, 2020 WL 4760138, at *29 n.33 (D. Idaho Aug. 17, 2020); *Edmo v. Idaho Dep't of Corr.*, 358 F. Supp. 3d 1103, 1125 (D. Idaho 2018); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1188 (N.D. Cal. 2015) (Giving "very little weight" to Dr. Levine's opinion, in part, because he fabricated an anecdote in his report).

Contrary to Defendant's suggestion, nothing in the declarations submitted by Drs. Laidlaw or Levine undermine the sufficiency of the evidence presented by Plaintiffs in support of this motion. In contrast to the substantial evidence and expert opinions submitted by D.H. and John, proffered by health care providers with extensive expertise treating transgender minors and grounded in the medical literature and standards that govern this field, Defendant has proffered doctors who lack relevant expertise and whose opinions fall well outside the views of any qualified medical experts on transgender minors. In similar cases, federal courts consistently grant preliminary injunctive relief to transgender litigants where defendants rely on the outdated and unscientific opinions of professionals like Drs. Laidlaw and Levine. *See, e.g.*, *Hecox*, 2020 WL 4760138, at *39; *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 934 (W.D. Wis. 2018); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 870 (S.D. Ohio 2016); *Norsworthy*, 87 F. Supp. 3d at 1195.

Defendant cannot manufacture a "debate" where none truly exists.[1] The research on "desistance," central to Defendant's argument, is of questionable utility even in children, but is irrelevant for adolescents. Reply Expert Declaration of Aron Janssen ("Janssen Reply Decl."), Doc. 25-1, ¶ 10; Reply Expert Declaration of Loren Schechter ("Schechter Reply Decl."), Doc. 25-2, ¶ 9. There is broad consensus, even among the key authors of the studies on "desistance," that after puberty starts, as it has for D.H. and John, it is not appropriate to withhold medical and surgical treatment for gender dysphoria. Janssen Reply Decl. ¶ 17. Defendant also repeatedly questions D.H.'s and John's ability to consent to male chest reconstruction surgery yet fails to address the reasoned professional opinions of their treating mental health providers to the contrary, disregarding their significant experience treating transgender young people generally, and D.H. and John, specifically. *See id.* ¶ 34;

---

[1] Although Defendant critiques Plaintiffs for refusing to disclose their health records at this early stage, those records were irrelevant to her experts, who generally dispute the standards of care and opined that D.H.'s and John's co-occurring conditions, which were detailed in the declarations submitted in support of the instant motion, are a sufficient basis for denying them medically necessary care. As Plaintiffs' experts explain, there is no valid medical basis for that opinion, which contradicts well-established standards of practice and care.

Declaration of Dr. Mischa Peck ("Peck Decl."), Doc. 4-2, ¶ 6; Declaration of Tamar Reed ("Reed Decl."), Doc. 5-2, ¶ 4.

For the reasons set forth in their opening brief and herein, Defendant is legally obligated to cover D.H.'s and John's male chest reconstruction surgery.

## II. ARGUMENT

### A. Preliminary Injunction Standard

Defendant suggests that a heightened "mandatory injunction" standard applies to Plaintiffs' motion. But Defendant is mistaken.[2] Plaintiffs seek a prohibitive injunction that would enjoin Defendant from enforcing a regulation that prohibits coverage for surgeries to treat gender dysphoria, including male chest reconstruction surgery. The injunction would require Defendant to review D.H.'s and John's authorization requests for male chest reconstruction surgery to treat gender dysphoria the same way AHCCCS does for any other treatment or service for beneficiaries under age 21. The fact that this injunction would result in AHCCCS covering medically necessary surgeries for D.H. and John does not make it a "mandatory injunction." *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) (injunction to "prevent[] future constitutional violations" is "a classic form of prohibitory injunction") (citing *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060–61 (9th Cir. 2014)). For example, the Ninth Circuit did not apply a heightened injunction standard when it enjoined a Medicaid regulation thereby requiring the state pay for services that otherwise would have been denied. *M.R. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012); *see also*, *Newton-Nations v. Rogers*, 316 F.Supp.2d 883 (D. Ariz. 2004) (applying prohibitory injunction standard to enjoin increase in co-pays, incidentally making administration of AHCCCS more costly).

And, even if a heightened injunction standard applies, Plaintiffs satisfy that standard. Mandatory injunctions "are permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not

---

[2] Defendant also incorrectly asserts that granting D.H. and John's motion would provide them with all the relief they seek. Def. Br. at 2. But, D.H. and John seek class certification and much broader injunctive relief. Thus, this motion is targeted to their urgent medical need for male chest reconstruction surgery and will not provide complete legal relief.

'doubtful.'" *Hernandez*, 872 F.3d at 999 (quoting *Marlyn Nutraceuticals v. Mucos Pharm.*, 571 F.3d 873, 878-79 (9th Cir. 2009)); *see* Def. Br. at 8. Here, the merits of Plaintiffs' case are far from "doubtful," and Plaintiffs have established that without access to medically necessary male chest reconstruction surgery they are at risk of "very serious" injury that is "not capable of compensation in damages." Whatever standard is applied, a preliminary injunction is warranted for the reasons set forth below and in Plaintiffs' motion, *see* Doc. 3.

### B.  Likelihood of Success on the Merits

#### 1.  EPSDT requires coverage of male chest reconstruction surgery.

Defendant claims that "AHCCCS does not discriminate against its transgender members or exclude gender dysphoria treatment . . . . [it] merely draws the line at gender reconstruction surgery." But the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions of the Medicaid Act prohibit Defendant from excluding coverage of medically necessary services for individuals under age 21. *Hern v. Beye*, 57 F.3d 906 (10th Cir. 1995), did not hold otherwise. *See* Def. Br. at 14. That case did not even involve an EPSDT claim. *Hern*, 57 F.3d at 910-11. Under EPDST, Defendant must cover any service included in the Medicaid Act when it is "necessary . . . to correct or ameliorate" an illness or condition, regardless of whether and how the service is covered for adults. 42 U.S.C. §§ 1396d(r)(5), 1396a(a)(10)(A), 1396d(a)(4)(B). Defendant does not argue, nor could she, that male chest reconstruction surgery is not included in the Medicaid Act. *See* 42 U.S.C. § 1396d(a)(2)(A) (outpatient hospital services), (5)(A) (services furnished by a physician); *see also Flack v. Wis. Dep't Health Servs.*, 395 F. Supp. 3d 1001 (W.D. Wis. 2019). Given that male chest reconstruction surgery is necessary to correct or ameliorate Plaintiffs' condition, it must be covered pursuant to EPSDT. *See Katie A., ex rel. Ludin v. L.A. County*, 481 F. 3d 1150, 1154 (9th Cir. 2007).

Defendant's contention that there is "legitimate debate" as to the safety and efficacy of the surgery has no scientific support. As explained above and in the reply expert declarations, there is no such debate. Male chest reconstruction surgery is not experimental, "risky," or "unproven." Def. Br. at 13 (citing *Ellis v. Patterson*, 859 F.2d 52, 55 (8th Cir.

1988)); Schechter Reply Decl. ¶ 4. Rather, "the medical profession has reached a formal consensus as to the safety and efficacy of surgical treatments for severe gender dysphoria," including for adolescents like D.H. and John Doe.[3] *Flack*, 395 F. Supp. 3d at 1016*; see* Schechter Reply Decl. ¶ 4; Expert Declaration of Aron Janssen, Doc. 5-5, ¶ 37–47.

Similarly, Defendant's claim that "neither [Plaintiff] has yet demonstrated medical necessity for the service," is inaccurate. D.H.'s and John's mental health providers referred them for male chest reconstruction and Dr. Schechter assessed D.H. and John and found them to be good candidates for the surgery. They have also lived as male for multiple years and started testosterone more than a year ago. Peck Decl. ¶ 14–17; Reed Decl. ¶ 10; Expert Declaration of Loren Schechter, Doc. 5-6, ¶ 49. That is more than the standards of care require. *See* WPATH SOC at 21. Defendant also disregards the fact that AHCCCS's categorical exclusion prevents transgender beneficiaries from establishing medical necessity for male chest reconstruction surgery. EPSDT requires Defendant to remove the exclusion and evaluate each Plaintiff's request for services based on medical necessity.

2.  *AHCCCS's exclusion violates the Comparability Requirement.*

The Medicaid Act also requires AHCCCS to ensure that the "medical assistance made available to any [categorically needy] individual . . . shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual." 42 U.S.C. § 1396a(a)(10)(B); 42 C.F.R. § 440.240. Thus, Defendant's argument that "the exclusion applies to all transgender persons alike" is unavailing. Def. Br. at 14. Her obligation is to ensure that AHCCCS does not "discriminat[e] among individuals with the same medical needs stemming from different medical conditions." *Davis v. Shah*, 821 F.3d 231, 258 (2d Cir. 2016). AHCCCS covers chest reconstruction surgery, including for adolescents, when necessary to treat other conditions; accordingly, it must cover that

---

[3] Defendant cites *Rush v. Parham*, 625 F.2d 1150, 1156 (5th Cir. 1980), for the proposition that gender affirming surgery is experimental. *See* Def. Br. at 13. That case is four decades old. Even assuming that the court was correct, and it was reasonable for Georgia to characterize the service as experimental in the mid-1970s, that same determination is wholly unreasonable today.

treatment for gender dysphoria. *See Flack.*, 395 F. Supp. 3d at 1019 (holding exclusion for "transsexual surgery" impermissibly "discriminates on the basis of diagnosis").

As Defendant correctly states, "need is the only basis upon which distinctions between recipients can be made without violating the comparability requirement." *V L. v. Wagner*, 669 F. Supp. 2d 1106, 1117 (N.D. Cal. 2009). As described above and in the extensive declarations accompanying Plaintiffs' motion, male chest reconstruction surgery is medically necessary for individuals with gender dysphoria, including some adolescents. Defendant tries to circumvent her obligation to cover the surgery by arguing that individuals with gender dysphoria do not have the same need for chest reconstruction surgery as individuals with other conditions. But where the same service is required to treat multiple medical conditions, the need for the service is rarely identical. *See Davis v. Shah*, 821 F.3d 231, 258 (2d Cir. 2016). Recognizing that fact, the Second Circuit held a rule that covered orthopedic footwear and compression stockings to treat complications for some conditions, but not others, violated the comparability requirement. *Id.* Here, Plaintiffs have established that the only reason that AHCCCS will not cover the surgery they need is because it was prescribed to treat gender dysphoria, instead of another condition such as breast cancer or fibrocystic breast disease. That differential treatment violates the Medicaid Act.

### 3. *Section 1557 prohibits excluding surgical care for gender dysphoria.*

Federal courts have consistently held that discrimination against transgender people is sex discrimination, including under Section 1557 of the ACA. *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1098–99 (S.D. Cal. 2017) (Section 1557); *see also Adams v. Sch. Bd. of St. Johns Cty.*, 968 F.3d 1286, 1304 (11th Cir. 2020) (Title IX); *Schwenk v. Hartford*, 204 F.3d 1187, 1201–02 (9th Cir. 2000) (Gender Motivated Violence Act). The Supreme Court's decision in *Bostock v. Clayton County, Ga.* is the latest in a long line of such cases. 140 S. Ct. 1731, 1737 (2020).[4] Even before *Bostock* confirmed

---

[4] Justice Alito's recognition of the implications of *Bostock* on health care benefits further demonstrates the majority opinion's definition of sex discrimination is to be applied consistently across federal sex-discrimination statutes.

that discrimination against transgender people constitutes sex discrimination, insurance exclusions that discriminated against transgender people were consistently struck down. *See, e.g., Flack v. Wis. Dept. of Health Srvcs.*, 395 F.Supp.3d 1001 (W.D. Wis. 2019); *Boyden v. Conlin*, 341 F.Supp.3d 979 (W.D. Wis. 2018); *see also Kadel v. Folwell*, 446 F.Supp.3d 1 (M.D.N.C. 2020) (denying motion to dismiss on Title IX, Section 1557, and equal-protection claims).

Defendant's claim that the exclusion is not discriminatory because AHCCCS covers other treatments for gender dysphoria is without merit. Section 1557 protects individuals from discrimination in covered health care settings and health insurance plans. As a covered entity, AHCCCS's categorical exclusion denies D.H. and John medically necessary surgical care because they are transgender. The surgery would have been covered if D.H. and John were males with gynecomastia or females who required chest surgery to treat cancer or traumatic injury. And, as detailed above and in the accompanying expert declarations, there is no other legitimate basis for denying D.H. and John coverage for male chest reconstruction surgery. Thus, AHCCCS is making an impermissible distinction based on transgender status, and therefore sex. That AHCCCS covers other treatments for gender dysphoria or would also discriminate transgender women seeking coverage for similar treatments is no defense. To the contrary, by discriminating against transgender men and transgender women equally, AHCCCS doubles its liability. *Bostock*, 140 S. Ct. at 1741.

The recent change in the federal regulations implementing Section 1557 does not affect D.H. and John's likelihood of success on this claim. As Defendant correctly noted, those regulations have been enjoined because the regulations were found to be arbitrary and capricious, and "contrary to law" for failing to address the effect of *Bostock* on Section 1557. *Walker v. Azar*, 2020 WL 4749859, at *8–10 (E.D.N.Y. Aug. 17, 2020). But even if that were not the case, the ACA prohibits discrimination based on sex, which, as the Supreme Court recently affirmed, encompasses discrimination based on transgender status. For reasons discussed above, any negative inference that might be drawn from the regulations cannot be reconciled with the plain text of Section 1557 or the body of caselaw

interpreting sex-discrimination protections to prohibit discrimination against transgender people, including *Bostock*. Consequently, Defendant has provided no basis to doubt that D.H. and John are likely to succeed on their Section 1557 claim.

### 4. AHCCCS's exclusion violates the Equal Protection Clause.

Defendant's exclusion of coverage for gender-confirmation surgery is subject to heightened scrutiny, which it cannot survive. As *Bostock* clearly holds, discrimination based on transgender status is a form of sex discrimination. 140 S. Ct. at 1741; *see also Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607–08 (4th Cir. 2020); *Adams*, 968 F.3d at 1296 (11th Cir. 2020); *Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F. 3d 1034, 1051 (7th Cir. 2017); *Smith v. City of Salem*, 378 F.3d 566, 572 (6th Cir. 2004). Defendant provides no basis for ignoring this controlling precedent. The two cases she cites pre-date *Bostock* and have been superseded by that case. *Druley v. Patton*, 601 F.App'x 632, 635 (10th Cir. 2015), relied on *Etsitty v. Utah Transit Authority*, 502 F.3d 1215, 1227 (10th Cir. 2007), which erroneously held that Title VII does not protect transgender employees and is no longer good law.[5] In *Jamison v. Davue*, the court, in dicta, instructed a *pro se* plaintiff that transgender status is not a suspect class under the Equal Protection Clause, without any analysis or citation, 2012 WL 996383, *4 (E.D.Cal. 2012); this instruction was then cited in the other district court decisions cited by Defendant. *See, e.g.*, *Braninburg* v. *Coalinga State Hosp.,* 2012 WL 3911910, *8 (E.D. Cal. 2012); *Kaeo-Tomaselli* v. *Butts,* 2013 WL 399184, *5 (D. Haw. 2013); *Murillo* v. *Parkinson,* 2015 WL 3791450, *12 (C.D. Cal. 2015). Plainly, however, that instruction has been superseded by *Bostock*.

AHCCCS's attempt to avoid heightened scrutiny by reframing its categorical exclusion as "a facially neutral policy regarding one specific category of services" is unavailing. The policy excludes all surgical treatments needed by transgender people to

---

[5] Defendant's reliance on *Stevens v. Williams* and *Johnston* v. *University of Pittsburgh* fails for the same reason. Those courts also relied on cases predating, and superseded by, *Bostock*. *See Johnston*, 97 F. Supp. 3d 657, 677 (W.D. Pa. 2015) (citing *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081, 1086 (7th Cir. 1984)); *Stevens*, 2008 WL 916991, *13 (D. Or. 2008) (citing *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659 (9th Cir. 1977)).

treat gender dysphoria, while covering the same surgical treatments for non-transgender people undergoing treatment for other medical conditions. As the court explained in *Norsworthy v. Beard*, a policy that expressly excludes gender-confirmation surgeries is discriminatory on its face. *See* 87 F. Supp. 3d 1104, 1109, 1119–20 (N.D. Cal. 2015).

AHCCCS cannot show that this sex-based exclusion is supported by an exceedingly persuasive or even legitimate justification. AHCCCS asserts that it has a sufficient interest in excluding male chest reconstructive surgery because of its cost and irreversibility. But AHCCCS covers many expensive and irreversible procedures for a host of conditions, even for minors. And in any case, the mere fact that denying coverage for a procedure would save money cannot satisfy even rational basis review, much less the heightened scrutiny that applies here. *See Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011). Nor can AHCCCS claim a legitimate interest in excluding coverage for surgical care that is supported by the well-established standards for the treatment of gender dysphoria, especially when AHCCCS otherwise adheres to those standards to cover other treatments for gender dysphoria. There is no legitimate, much less exceedingly persuasive, justification for covering some medically necessary treatments for gender dysphoria, but not others. Thus, the justifications proffered by Defendant cannot even satisfy rational basis.

### C. D.H. and John continue to experience irreparable harm.

Defendant's attempts to diminish the ongoing and pervasive harm D.H. and John experience are inconsistent with the direct and substantial evidence before this Court.

Defendant seeks to minimize those harms by claiming that the "principal source" of "medical harm" to D.H. and John is "the binding that each Plaintiff wears." In fact, the principal source of harm is the denial of medically needed care, which will have a permanent negative impact on their mental and physical health. Defendant ignores the serious harms to D.H.'s and John's mental health due to the continued denial of care as detailed in the extensive declarations by Plaintiffs, their health care providers, and experts. *See, e.g.*, Declaration of D.H., Doc. 5, ¶ 9–15; Declaration of John Doe, Doc. 4, ¶ 14–17; Peck Decl. ¶ 21; Reed Decl. ¶¶ 12–13; Janssen Reply Decl. ¶ 33; Schechter Reply Decl. ¶ 15. Without

male chest reconstruction surgery, D.H.'s and John's mental health will deteriorate, which is particularly concerning given their history of self-harm, suicidal ideation, and, for D.H., psychiatric hospitalizations. The delay in obtaining this critical surgical care also impairs D.H.'s and John's ability to treat their co-occurring mental health conditions, making those conditions more difficult to treat. Those too are irreparable injuries.

Moreover, Defendant fails even to acknowledge, much less rebut, the extensive evidence that the binding prevents D.H. and John from engaging in a variety of activities, including sports, dancing, and other recreational and social activities that are critical to both their short- and long-term health and well-being. The binding places significant limitations on Plaintiffs' ability to function, preventing D.H. from fully engaging in school and interfering in John's social interactions with his peers. These lost opportunities are quintessential irreparable injuries; they will negatively affect Plaintiffs for their rest of their lives, in ways that money damages cannot remedy. *McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275 (2d Cir. 2004); *Doe v. Wood Cty. Bd. of Educ.*, 888 F. Supp. 2d 771 (S.D.W. Va. 2012). Defendant also dismisses the serious risk that binding will exacerbate D.H.'s asthma during the pendency of this case. No amount of monetary damages will give him back that lost lung capacity, which is particularly damaging for D.H. because of its likely impact on his ability to return to dancing.

Defendant's efforts to distinguish the cases cited by Plaintiffs lack merit. The fact that Plaintiffs' gender dysphoria is not as predictably lethal as AIDS once was does not change the fact that D.H. and John proffered substantial evidence that they qualify for male chest reconstruction under the prevailing standards of care and that their health and wellbeing will be irreparably damaged, including the possibility of serious depression and suicidality, if they are forced to wait until after trial for relief. *See* Def. Br. at 11 (citing *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701 (9th Cir. 1988)). As courts have recognized in other cases, the harms caused to transgender youth by denials of medically needed care or by the enforcement of policies that undermine their medical treatment warrant preliminary relief. *See, e.g.*, *Whitaker v. Kenosha Unified Sch. Dist.*, Case No. 16-

CV-943-PP, 2016 WL 5239829, at *4-6 (E.D. Wis. Sept. 22, 2016) (declarations supported finding of irreparable harm if school continued to treat plaintiff differently because he is transgender), *aff'd*, 858 F.3d 1034 (7th Cir. 2017); *Highland Local Sch. Dist.*, 208 F. Supp. 3d at 870 ("Some issues in this case are difficult, but determining whether Jane has been harmed from the School District's policy is not one of them.").

Further, D.H. and John have established irreparable harm due to their strong likelihood of success on the merits of each of their claims. Violations of federal constitutional rights and statutory antidiscrimination protections are irreparable injuries. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) (recognizing presumption of irreparable injury in Fair Housing Act claim); *Smallwood v. Nat'l Can Co.*, 583 F.2d 419, 420 (9th Cir. 1978) (same, but on Title VII claim). That principle applies in full force here.

### D. The balance of harms decisively favors D.H. and John.

When considering whether to issue a preliminary injunction, the Court should consider the parties' respective "competing claims of injury," and "the effect on each party of the granting or withholding of the requested relief." *Arc of Cal. v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014). Contrary to Defendant's claim, Plaintiffs have established "that chest reconstruction surgery is safe, effective, and urgent for them." Def. Br. at 18; *see* WPATH SOC 21; Janssen Decl. ¶ 46; Schechter Decl. ¶¶ 23–37. Thus, Defendant's suggestion that AHCCCS would be harmed by covering services that are ineffective or unsafe is not relevant here. Also, the cost of male chest reconstruction surgery for D.H. and John would be miniscule, at best, in proportion to AHCCCS's budget, and cannot outweigh the irreparable harm to D.H. and John. *See*, *e.g.*, *Flack*, 395 F. Supp. 3d at 1008.

Defendant has proffered no harm sufficient to overcome the serious physical and emotional harm D.H. and John experience due to AHCCCS's categorical exclusion for surgical care to treat gender dysphoria. The balance of equities weighs heavily in favor of prohibiting Defendant from denying D.H. and John coverage for male chest reconstruction surgery, a critical and medically necessary treatment for their gender dysphoria.

|   |   |
|---|---|
|   | Respectfully submitted, |
| DATED: OCTOBER 26, 2020 | **PERKINS COIE LLP** |
|   | /s/ Daniel C. Barr |
|   | Daniel C. Barr (Bar No. 010149)<br>Janet M. Howe (Bar No. 034615)<br>PERKINS COIE LLP<br>2901 N. Central Avenue, Suite 2000<br>Phoenix, AZ 85012-2788<br>T: +1 602 351 8085<br>F: +1 602 648 7085<br>Email: dbarr@perkinscoie.com<br>         jhowe@perkinscoie.com |
|   | Brent P. Ray*<br>Andrew J. Chinsky*<br>KING & SPALDING LLP<br>353 N. Clark Street, 12th Floor<br>Chicago, Illinois 60654<br>T: +1 312 995 6333<br>F: +1 312 995 6330<br>Email: bray@kslaw.com<br>         achinsky@kslaw.com |
|   | Asaf Orr*<br>NATIONAL CENTER FOR LESBIAN RIGHTS<br>870 Market Street, Suite 370<br>San Francisco, CA 94102<br>T: +1 415 392 6257<br>F: +1 415 392 8442<br>Email: aorr@nclrights.org |
|   | Abigail K. Coursolle*<br>Catherine McKee*<br>NATIONAL HEALTH LAW PROGRAM<br>3701 Wilshire Boulevard, Suite 750<br>Los Angeles, CA 90010<br>T: +1 310 204 6010<br>Email: coursolle@healthlaw.org<br>         mckee@healthlaw.org |
|   | *Attorneys for Plaintiffs and the Class* |
|   | * Admitted *pro hac vice* |