Brent P. Ray (Admitted *pro hac vice*)
Andrew J. Chinsky (Admitted *pro hac vice*)
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, Illinois 60606
T: +1 312 995 6333
F: +1 312 995 6330
Email: bray@kslaw.com
       achinsky@kslaw.com

Daniel C. Barr (Bar No. 010149)
Janet M. Howe (Bar No. 034615)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
T: +1 602 351 8085
F: +1 602 648 7085
Email: dbarr@perkinscoie.com
       jhowe@perkinscoie.com

*Counsel for Plaintiffs and the Class*
(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| D.H., by and through his mother, Janice Hennessy-Waller; and John Doe, by his guardian and next friend, Susan Doe, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Jami Snyder, Director of the Arizona Health Care Cost Containment System, in her official capacity,<br><br>Defendant. | No. 4:20-cv-335-SHR<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs' claims in this matter are not subject to an exhaustion requirement, and even if the Court were inclined to require exhaustion, exhaustion would be futile in this case.

### I. Plaintiffs' claims do not require administrative exhaustion.

It is well-settled that exhaustion of administrative remedies is not required before seeking injunctive relief under 42 U.S.C. § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982); *see also Jones v. Blinziner*, 536 F. Supp. 1181, 1193 (N.D. Ind. 1982) ("[E]xhaustion is not required in actions brought pursuant to 42 U.S.C., Section 1983, when a state welfare policy or practice is at issue, particularly when the question for the courts is whether such policy or practice conflicts with federal law or the Constitution."). In addition, all Circuits to consider the question have held that "the Medicaid Act does not require Plaintiffs to exhaust their state administrative remedies." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 445 (6th Cir. 2020) (collecting cases); *see also Evangelical Lutheran Good Samaritan Soc'y v. Betlach*, No. CV-16-08169-PCT-JJT, 2017 WL 3334870, at *5 (D. Ariz. Aug. 4, 2017) ("[E]xhaustion of state administrative remedies is not required before a plaintiff brings a § 1983 claim in this Court."); *Dual Diagnosis Assessment & Treatment Ctr., Inc. v. Hughes*, No. CV 13-6935-SVW-VBKX, 2016 WL 11522965, at *7 (C.D. Cal. Sept. 27, 2016) (exhaustion is inappropriate where "the *sole* remedy for the § 1983 claim against [the director] in her official capacity i[s] an injunction.") (emphasis in original); *Katie A. v. Bonta*, 433 F. Supp. 2d 1065, 1078 (C.D. Cal. 2006), *rev'd and remanded on other grounds sub nom. Katie A., ex rel. Ludin v. Los Angeles Cty.*, 481 F.3d 1150 (9th Cir. 2007) (in case challenging state's failure to provide Medicaid services to youth under EPSDT, holding that Plaintiffs were not required to seek the services through the fair hearing process before bringing suit).

### II. Requiring Plaintiffs to exhaust administrative remedies would be futile.

Imposing an exhaustion requirement in this case would be inappropriate, since any effort to obtain male chest reconstruction surgery through prior authorization, an appeal, and the Medicaid fair hearing process would be futile.

Most individuals enrolled in Medicaid in Arizona, including D.H. and John Doe, receive covered services through a private managed care plan. Pursuant to their contracts with the State, the plans are paid a set per-member-per-month amount to provide health care services to AHCCCS enrollees. *See* Ariz. Rev. Stat. §§ 36-2903(A) (establishing AHCCCS as "consisting of contracts with contractors for the provision of hospitalization and medical care coverage to members), 36-2901 (defining "contractor" as a person or entity that has a prepaid capitated contract with AHCCCS to provide health care to members), 36-2904. The plans, in turn, enter into contracts with health care providers to reimburse the providers for covered services delivered to enrollees. *See* Ariz. Admin. Code R9-22-705; *see also* Ariz. Admin. Code R9-22-202(B)(1) ("Only medically necessary, cost effective, and federally-reimbursable and state-reimbursable services are covered services").

With respect to certain covered services, a plan will only pay a provider if the provider requests authorization from the plan prior to delivering the service. *See* Ariz. Admin. Code R9-22-202(C) (permitting plans to deny coverage for non-emergency care if prior authorization is not obtained as specified by regulation), R9-22-712(D) (same), R9-22-210(A)(4)(b) (requiring providers to obtain prior authorization for non-emergency care as outlined by the terms of their contracts with the plans). Generally, the plans require providers to obtain prior authorization for pre-scheduled surgeries and procedures. *See, e.g.,* Arizona Complete Health, *Arizona Complete Care Plan Member Handbook* 71 (2020).[1]

Therefore, managed care enrollees seeking coverage for a particular service must fulfill three basic steps: (1) the individual's provider determines that a service or procedure is medically necessary to treat the enrollee's condition; (2) the provider seeks prior authorization from the plan to perform that service or procedure; and (3) the plan approves (or denies) that request for prior authorization. If a provider wishes to perform a service and requests prior authorization for a service that AHCCCS covers, the plan independently assesses whether that service is medically necessary for the particular enrollee. However, if

---

[1] *Available at* https://www.azcompletehealth.com/content/dam/centene/az-complete-health/pdf/member/handbooks/508_AzCH-CCP%20Member%20Handbook%20-%20ACC-%20CYE2021%20FINAL_Eng.pdf.

a provider requests prior authorization for a service that AHCCCS does not cover, the plan simply denies coverage on that basis.

Under the terms of the Challenged Exclusion, *see* Ariz. Admin. Code R9-22-205(B)(4)(a), the surgery Plaintiffs seek is not a covered service, meaning Plaintiffs' managed care plans will not evaluate whether it is medically necessary for them and will automatically deny the service as non-covered.[2] In other words, the Challenged Exclusion prevents a plan from ever reaching the question of medical necessity—a provider's request for prior authorization for male chest reconstruction surgery will always be denied *not* due to an individual's lack of medical necessity, but because of the Challenged Exclusion. *See, e.g.,* Arizona Complete Health, *Arizona Complete Care Plan Member Handbook* 35 (2020) (listing "gender affirming operations" as a non-covered service);[3] Care1st Health Plan Arizona, *Member Handbook* 18 (2020), (listing "sex change operations" as a non-covered service).[4]

When a managed care plan denies a request for prior authorization, the enrollee has a right to appeal the denial, first with the plan itself. *See* 42 USC § 1396a(a)(3); 42 C.F.R. §§ 438.400 to 438.424; Ariz. Admin. Code R9-34-201 to R9-34-225. That is exactly what happened to Plaintiff D.H., whose provider requested prior authorization for the surgery, which his plan denied; D.H. then appealed the denial of this surgery, but the plan upheld its denial of coverage *not* because it had determined the surgery was not medically necessary for D.H., but because of the Challenged Exclusion. *See* Compl. ¶ 87.

---

[2] For the first time at oral argument, counsel for Defendant suggested that the Challenged Exclusion is not being fully or uniformly implemented, stating that two AHCCCS enrollees received coverage for male chest reconstruction surgery. Defendant did not indicate why or how those two enrollees received coverage. For example, it could be that a plan or AHCCCS made an administrative error. Or, it could be that a particular managed care plan decided to use its own funds to cover the service in order to meet its obligations under federal law, even though the plan's contract with the state excludes coverage of male chest reconstructive surgery. Regardless, these other cases have no bearing on the legality of the Challenged Exclusion, which *is* being enforced against Plaintiffs.

[3] *Available at* https://www.azcompletehealth.com/content/dam/centene/az-complete-health/pdf/member/handbooks/508_AzCH-CCP%20Member%20Handbook%20-%20ACC-%20CYE2021%20FINAL_Eng.pdf.

[4] *Available at* https://care1staz.com/az/pdf/member/member_handbook/2021/Care1stMemberHandbook.pdf?ver=2020.10.09

- 3 -

If the plan upholds its initial decision, the enrollee has a right to request a fair hearing with the State. 42 C.F.R. §§ 438.402(c)(1)(i), 431.220; Ariz. Admin. Code R9-34-217(A). The Arizona Office of Administrative Hearings conducts the fair hearing. *See* Ariz. Admin. Code R9-34-202 (defining "state fair hearing" as an administrative hearing under Ariz. Rev. Stat. Title 41, Chapter 6, Article 10); Ariz. Rev. Stat. §§ 41-1092 to 41-1092.12. After the hearing, the administrative law judge issues a written decision and sends it to AHCCCS. *See* Ariz. Rev. Stat. § 41-1092.08(A). Defendant may reject or modify the ALJ's decision, in which case her decision is the final decision; if Defendant does not reject or modify the ALJ's decision, it is final. *See id*. § 41-1092.08(B), (F). The enrollee may request rehearing or review of the final decision by Defendant, *see id*. § 41-1092.09, Ariz. Admin. Code § R9-34-223, or may appeal the directly to Arizona Superior Court, *see* Ariz. Rev. Stat. §§ 41-1092.08(H); 12-905(A).

Requiring Plaintiffs to exhaust this procedure—including to request a fair hearing with the State—is inappropriate here. The question presented is a purely legal one presenting important statutory and constitutional questions that are squarely within the competence of the courts to resolve. *See Skubel v. Sullivan*, 925 F. Supp. 930, 937 (D. Conn. 1996*), aff'd as modified sub nom. Skubel v. Fuoroli*, 113 F.3d 330 (2d Cir. 1997) ("When an agency's decision essentially turns on a question of law . . . courts generally find little or no reason to require exhaustion of agency remedies, as agency expertise and an agency record are of minimal value.").

Moreover, Defendant has made clear her intent to enforce the Challenged Exclusion. Because the State regulation prohibits AHCCCS from covering male chest reconstruction surgery for Plaintiffs, an ALJ is extremely unlikely to overturn a managed care plan's refusal to cover it, and even if an ALJ did so, Defendant could simply reject the ALJ's decision and continue to enforce the regulation. *See, e.g., Tallahassee Mem'l Reg'l Med. Ctr. v. Cook,* 109 F.3d 693, 702 (11th Cir. 1997) ("[E]ven if exhaustion were required, [the Medicaid Agency]'s posture in this case indicates that reliance on administrative action would be futile because Plaintiffs' claims would likely be denied in whole or in part.").

1  Thus, as long as the Challenged Exclusion remains in effect, requiring Plaintiffs to exhaust this procedure would force Plaintiffs to pursue what would be a futile appeal—Plaintiffs will not have an opportunity to make their case that the procedure is medically necessary, because the appeal will necessarily fail due to the Challenged Exclusion.

Numerous cases have found that the "futility exception is particularly appropriate where the past pattern of a plan administrator, as well as its position on the merits of a current matter in litigation, reveal that any further administrative review would provide no relief." *Alday v. Raytheon Co.*, No. CV 06-32 TUCDCB, 2006 WL 2294819, at *4 (D. Ariz. July 27, 2006); *see also Morgan v. Laborers Pension Tr. Fund For N. California*, 433 F. Supp. 518, 529 (N.D. Cal. 1977); *Jones,* 536 F. Supp. at 1202 (Medicaid administrative hearing process could not remedy state's systemic practices). Here, Defendant has made her position clear—the Challenged Exclusion does not violate federal law—such that requiring Plaintiffs to access a futile hearing process "serves no purpose and resembles more a scene from Kafka than a constitutional process." *Gray Panthers v. Schweiker*, 652 F.2d 146, 168 (D.C. Cir. 1980). That is particularly true here where the delay would also be highly prejudicial to Plaintiffs given that they filed a motion for preliminary injunction seeking immediate relief from the serious irreparable harms they are currently experiencing because of Defendant's unlawful conduct.

This Court should proceed to a consideration of the merits of Plaintiffs' legal claims against the Challenged Exclusion.

Respectfully submitted,

DATED:  FEBRUARY 10, 2021  **PERKINS COIE LLP**

/s/ Daniel C. Barr
Daniel C. Barr (Bar No. 010149)
Janet M. Howe (Bar No. 034615)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
T: +1 602 351 8085
F: +1 602 648 7085
Email: dbarr@perkinscoie.com
           jhowe@perkinscoie.com

Brent P. Ray*
Andrew J. Chinsky*
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, Illinois 60654
T: +1 312 995 6333
F: +1 312 995 6330
Email: bray@kslaw.com
        achinsky@kslaw.com

Asaf Orr*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
T: +1 415 392 6257
F: +1 415 392 8442
Email: aorr@nclrights.org

Abigail K. Coursolle*
Catherine McKee*
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Boulevard, Suite 750
Los Angeles, CA 90010
T: +1 310 204 6010
Email: coursolle@healthlaw.org
        mckee@healthlaw.org

*Attorneys for Plaintiffs and the Class*

* Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2021, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Logan T. Johnston
JOHNSTON LAW OFFICES, P.L.C.
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022
ltjohnston@live.com

David Barton
Kathryn Hackett King
BURNSBARTON PLC
2201 E. Camelback Road, Suite 360
Phoenix, AZ 85016
david@burnsbarton.com
kate@burnsbarton.com

*Attorneys for Defendant*

*s/ Marie van Olffen*

138410-0001/151448835.1