# Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

|  |  |
|---|---|
| _Plaintiff_ | ) |
| v. | ) Civil Action No. |
| _Defendant_ | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

_(Name of person to whom this subpoena is directed)_

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR   /s/ Janet M. Howe

_____         _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:

Janet M. Howe, Perkins Coie, 2901 North Central Avenue, Suite 2000, Phoenix, AZ 85012; JHowe@perkinscoie.com; 602-351-8187

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Subpoena to Michael K. Laidlaw, M.D.**

**EXHIBIT A – Things to be Produced**

**Definitions and Instructions**

1. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means.

3. "Arizona Medicaid" collectively refers to the State of Arizona's Medicaid program and its constituent programs governed by Ariz. Rev. Stat. §§ 36-2901 – 36-2999.08, 36-3401 – 36-3436.01 and the associated implementing regulations in Chapters 21, 22, 28, 29, 30, 31, and 34 of Title 9 of the Arizona Administrative Code and administered by AHCCCS and/or by one of several participating managed care organizations.

4. "AHCCCS" refers to the State Medicaid agency that administers the Arizona Medicaid program, known as the Arizona Health Care Cost Containment System, and includes any officials, employees, agents, representatives, contractors, attorneys, and any other persons acting or purporting to act for or on behalf of AHCCCS and/or its Secretary.

5. "Proposed Class" refers to all transgender individuals under the age of 21 who are or will be enrolled in AHCCCS, have or will have a diagnosis of gender dysphoria, and are seeking or will seek coverage for male chest reconstruction surgery following a determination by their respective health care providers that the procedure is necessary to treat gender dysphoria.

6. "Plaintiffs" refers to the Named Plaintiffs and the Proposed Class.

7. "Action" refers to the above-titled action, *D.H., et al. v. Snyder*, U.S. District Court for the District of Arizona, Case No. 4:20-cv-00335-SHR.

8. "Complaint" means Plaintiffs' operative complaint in this Action.

9. "Challenged Exclusion" means the exclusion of "gender reassignment surgeries" from "AHCCCS coverage" under subsection B.4(a) of Arizona Administrative Code R9-22-205, adopted effective May 20, 1982.

10. "Gender Reassignment Surgeries" means any and all of the services and procedures excluded from AHCCCS coverage under the Challenged Exclusion referred to with the term "gender reassignment surgeries."

11. "Gender Dysphoria" refers to the condition currently referred to as Gender Dysphoria in Adolescents and Adults in the Diagnostic and Statistical Manual of Psychiatric Disorders, Fifth Edition ("DSM-5"), and related diagnoses in current or previous editions of the DSM and/or the International Classification of Diseases ("ICD"), including gender identity disorder and transsexualism.

12. "You" or "Your" means deponent, Michael K. Laidlaw, M.D.

13. "Declaration" means the Expert Declaration of Michael K. Laidlaw, M.D. that You executed and submitted in support of Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction filed in this Action on September 28, 2020 as Document 18-1.

14. If a date range for responsive documents is not provided for in the request or is not apparent from the context of the request itself, the request seeks documents created, received or read by You from January 1, 2017 to the present.

15. One legible copy of each document requested is to be produced. Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason of handwritten or other notation or any addition or omission, shall constitute a separate document and must be produced. Plaintiffs reserve the right to inspect the original of any document produced upon reasonable request.

16. All documents that are physically attached to each other shall be considered one document and left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or other methods, shall

be left so segregated or separated. Documents shall be retained in the order in which they are maintained in the file where they are found.

17. If an objection to a request is based upon a claim of privilege, attorney work product, or any other basis, please identify, contemporaneously with producing responses to these Requests, in writing each document so withheld by providing the following information:

    a. the date or approximate date of the document;

    b. the type of document (e.g., letter, memorandum);

    c. a description of the subject matter of the document;

    d. each and every person who prepared, signed, or participated in the preparation of the document or any copy thereof;

    e. each and every person who received the document or any copy thereof;

    f. the present custodian(s) of each document;

    g. a list of attachments or enclosures to the document; and

    h. the nature of the privilege asserted and any statutes, rules, or cases that you contend support the assertion of privilege.

18. Identify and produce all segregable portions of any responsive document to which a claim of privilege, attorney work product, or other basis for withholding the document does not apply.

**Document Requests**

1. Your Communications with AHCCCS regarding gender identity issues, Gender Dysphoria, and/or treating Gender Dysphoria, and/or Gender Reassignment Surgeries, from January 1, 2017 to the present.

2. Any Communications between You and Stephen B. Levine, M.D. regarding gender identity issues, Gender Dysphoria, treating Gender Dysphoria, and/or Gender Reassignment Surgeries from January 1, 2017 to the present.

3. Any Communications between You and any person, except for any attorney acting on AHCCCS's behalf, regarding the opinions expressed in Your Declaration.

4. Any Communications between You and any person, except for any attorney acting on AHCCCS's behalf, regarding Your preparation of the Declaration.

5. All Documents cited in Your Declaration.

6. All Documents that reflect facts or data considered by You in preparing Your Declaration.

7. All Communications that relate to Your compensation for preparing Your Declaration.

8. All Communications between You and any attorney employed or engaged by AHCCCS, that relate to any facts or data that You considered in preparing Your Declaration.

9. All Communications between You and any attorney employed or engaged by AHCCCS, that relate to any assumptions provided by the attorney and that You relied on in preparing Your Declaration, including but not limited to assumptions regarding the named plaintiffs in the Action.

10. All Documents and/or Communications that You generated, reviewed, reflected upon, read or used in connection with the formulation or preparation of Your Declaration, even if such information was rejected or not relied upon in formulating any opinion rendered.

11. Documents that reflect the development, foundation or basis of the opinions set forth in Your Declaration, including but not limited to notes, task lists, outlines, or letters You made in preparation of Your Declaration.

12. All Communications between You and any attorney employed or engaged by AHCCCS, that relate to any facts or data that You should consider in forming any opinion or testimony You intend to give at deposition or trial in this action.

13. All Documents and Communications regarding the development and promulgation of the Challenged Exclusion, including but not limited to documents You have received from AHCCCS reflecting reports, data, research or studies considered or reviewed by AHCCCS in connection with the development or promulgation of the Challenged Exclusion.

14. Documents sufficient to identify all actions in state or federal court or arbitration in which You have been asked to submit a declaration or affidavit, or asked to testify at deposition, trial or arbitration, regarding gender identity issues, Gender Dysphoria, the treatment of Gender Dysphoria, or Gender Reassignment Surgery.

15. All affidavits or declarations that You have prepared, or amicus briefs prepared at Your request or on Your behalf, for filing in any state or federal court or arbitration regarding gender identity issues, Gender Dysphoria, the treatment of Gender Dysphoria, or Gender Reassignment Surgery.

16. All transcripts of testimony You have given in deposition, trial or arbitration where the opinions subject to Your testimony concerned gender identity issues, Gender Dysphoria, the treatment of Gender Dysphoria, or Gender Reassignment Surgery.

17. All Documents, including statements, letters, memoranda, or other writings prepared by You, for consideration by lawmakers or regulatory agencies regarding proposed legislation or regulation or amendments thereto that impact transgender rights, including but not limited to medical coverage for treatment of Gender Dysphoria, or Gender Reassignment Surgery.

18. All transcripts, audio or video recordings, or documents reflecting testimony offered by You, for consideration by lawmakers or regulatory agencies regarding proposed legislation or regulation or amendments thereto that impact transgender rights, including but not limited to medical coverage for treatment of Gender Dysphoria, or Gender Reassignment Surgery.

19. All Documents reflecting statements You have made on social media platforms regarding Your views, opinions, studies or research on gender identity issues, transgenderism, transgender persons, transgender rights, Gender Dysphoria, or Gender Reassignment Surgery.

20. All Documents, including statements, letters, articles, or other writings, prepared by You for publication in any internet website, internet forum, newspaper, magazine, or scientific, academic or clinical journal, regarding Your views, studies or research on gender identity issues, transgenderism, transgender persons, transgender rights, Gender Dysphoria, or Gender Reassignment Surgery.

21. Document(s) sufficient to reflect the number of persons diagnosed with gender dysphoria that You have treated in your practice, under 14 years old, between 14-17 years old and over 17 years old.

22. Document(s) sufficient to reflect the number of patients You have treated in your practice for gender incongruence, gender dysphoria, or conditions, symptoms or comorbidities associated with gender incongruence or gender dysphoria, under 14 years old, between 14-17 years old and over 17 years old, each calendar year.

23. Document(s) sufficient to reflect the total number of patients You have treated in Your practice under 14 years old, between 14-17 years old, and over 17 years old, each calendar year.

24. Document(s) sufficient to reflect the total number of Your patients for whom You have prescribed, recommended, requested authorization, or submitted statements in support of a request for authorization for hormone therapy to treat gender dysphoria, under 14 years old,

between 14-17 years old and over 17 years old, each calendar year You have been a practicing physician.

25. Document(s) sufficient to reflect the total number of Your patients for whom You have recommended, requested authorization, or submitted statements in support of a request for authorization for Gender Reassignment Surgeries or surgical intervention to treat gender dysphoria, under 14 years old, between 14-17 years old and over 17 years old, each calendar year You have been a practicing physician.

26. Document(s) sufficient to reflect the total number of Your patients who have undergone a surgical intervention to treat gender dysphoria or Gender Reassignment Surgeries before or during the course of Your treatment of the patients, under 14 years old, between 14-17 years old and over 17 years old, each calendar year You have been a practicing physician.

27. All Documents which You have reviewed that reflect clinical guidelines for the use of hormone-replacement therapy to treat gender dysphoria, including children or adolescents diagnosed with Gender Dysphoria.

28. All Documents which You have reviewed regarding the clinical benefits of the use of hormone-replacement therapy to treat Gender Dysphoria, including children or adolescents diagnosed with Gender Dysphoria.

29. All Documents which You have reviewed that reflect clinical guidelines for the use of surgical intervention to treat patients diagnosed with Gender Dysphoria, including children or adolescents diagnosed with Gender Dysphoria.

30. All Documents which You have reviewed regarding the clinical benefits of the use of surgical intervention to treat Gender Dysphoria, including children or adolescents diagnosed with Gender Dysphoria.

31. All statements You have written recommending a course of treatment or supporting a request for authorization for hormone therapy or gender affirming procedures to treat Gender Dysphoria, with the patient names and identifying information redacted.

32.     The publication "Correction: Transgender Surgery Provides No Mental Health Benefit" identified in Exhibit A to Your Declaration, and any materials You reviewed in preparation of that publication.

33.     The publication "Gender affirmation surgery conclusion lacks evidence" identified in Exhibit A to Your Declaration, and any materials You reviewed in preparation of that publication.

34.     The publication "The Pediatric Endocrine Society's Statement on Puberty Blockers Isn't Just Deceptive.  It's Dangerous" identified in Exhibit A to Your Declaration, and any materials You reviewed in preparation of that publication.

35.     The publication "The Right to Best Care for Children Does Not Include the Right to Medical Transition" identified in Exhibit A to Your Declaration, and any materials You reviewed in preparation of that publication.

36.     The publication "Letter to the Editor: 'Endocrine Treatment of Gender-Dysphoric/Gender Incongruent Persons: An Endocrine Society Clinical Practice Guideline'" identified in Exhibit A to Your Declaration, and any materials You reviewed in preparation of that publication.

37.     The publication "The Gender Identity Phantom" identified in Exhibit A to Your Declaration, and any materials You reviewed in preparation of that publication.

38.     The publication "Gender Dysphoria and Children: An Endocrinologist's Evaluation of 'I am Jazz'" identified in Exhibit A to Your Declaration, and any materials You reviewed in preparation of that publication other than the book "I am Jazz."

39.     All Communications between You and any individual working for or acting on behalf of The Witherspoon Institute, or "Public Discourse" of thepublicdiscourse.com, regarding gender identity issues, transgenderism, transgender persons, transgender rights or Gender Dysphoria.

40.     All Communications between You and any individual working for or acting on behalf of Alliance Defending Freedom regarding preparation of the Brief of Amicus Curiae filed

with the U.S. Court of Appeals for the 11th Circuit in the Case of *Drew Adams v. School Board of St. Johns County, Florida*, identified in Exhibit A to Your Declaration.

41. All Communications regarding the case of *Drew Adams v. School Board of St. Johns County, Florida* in the U.S. Court of Appeals for the 11th Circuit, identified in Exhibit A to Your Declaration.

42. All Documents that reflect or support Your opinion, and/or that You relied upon when rendering your opinion in Paragraph 18, footnote 1 of Your Declaration, that Plaintiff John Doe should be examined to determine whether he suffers from "dissociative identity disorder," including but not limited any studies, journals, articles, reports or research regarding any connection or relation between Gender Dysphoria and dissociative identity disorder or the misdiagnosis of dissociative identity disorder as Gender Dysphoria.

43. All Documents reflecting the percentage of middle adolescents (ages 14 to 17) diagnosed with gender dysphoria that will "outgrow" the condition or remain dysphoric by the time they reach adulthood, including but not limited to any such documents You prepared or reviewed in preparation of the article cited in Paragraph 22 of Your Declaration ("Letter to the Editor: Endocrine Treatment of Gender Dysphoria/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline").

44. All Documents that reflect or support Your opinion, and/or that You relied upon when rendering your opinion that "[t]here is currently no way to predict who will desist and who will remain dysphoric," in Paragraph 22 of Your Declaration.

45. All Documents that You have reviewed regarding any connection or link between Gender Dysphoria and an "increased rate of postoperative infections," or "increased morbidity and mortality" after gender-affirming surgery to treat Gender Dysphoria.

46. All Documents that reflect or support Your opinion, and/or that You relied upon when rendering your opinion that You have "significant concerns about the ability of two minors with histories of significant underlying psychiatric issues, separate and apart from gender

dysphoria, to provide informed consent to undergo an irreversible sex reassignment surgery," in Paragraph 29 of Your Declaration.

47.     All Documents that support the opinion found in Paragraph 33 of Your Declaration that the "professional consensus about the psychiatric, psychological, medical, and surgical management of gender dysphoria" that establish WPATH's standards of care, "exists only within the confines of its organization."

48.     All research, studies or data You have conducted, prepared or reviewed that support Your opinion that gender-affirming surgery is not effective or safe for treating minors, that post-date the study referenced in Paragraph 34 of Your Declaration titled "*Chest Reconstruction and Chest Dysphoria in Transmasculine Minors and Young Adults Comparisons of Nonsurgical and Postsurgical Cohorts*, 172 JAMA Pediatrics 431, 434 (2018)."

49.     All Documents that reflect or support Your opinion, and/or that You relied upon when rendering your opinion that the participants in *Chest Reconstruction and Chest Dysphoria in Transmasculine Minors and Young Adults Comparisons of Nonsurgical and Postsurgical Cohorts* "lacked the maturity and capacity of good judgement for truly informed consent for this life altering procedure," in Paragraph 34 of your declaration.

50.     All research, studies or data that You have conducted, prepared or reviewed that support Your disagreement with the statement that "Chest dysphoria was high among presurgical transmasculine youth, and surgical intervention positively affected both minors and young adults," as referenced in Paragraph 34 of Your Declaration.

51.     All Documents that support Your "professional opinion" that for persons "under 21…, there is a significant chance that a young person may later regret" top surgery to treat gender dysphoria," as set forth in Paragraph 40 of Your Declaration.

52.     All Documents that support Your "professional opinion" that "there is a significant chance that a young person may later regret" top surgery to treat gender dysphoria" as set forth in Paragraph 40 of Your Declaration, particularly for adolescents over the age of 14.

53. All Documents that support Your "professional opinion" that male chest reconstruction surgery involves "an organ that cannot be replaced," as set forth in Paragraph 40 of Your Declaration.

54. All Documents that support Your "professional opinion" that "it is never appropriate to provide bilateral mastectomy with chest wall recontouring surgery on individuals diagnosed with gender dysphoria," as set forth in Paragraph 40 of Your Declaration.

55. All Documents that You have reviewed that contradict Your "professional opinion" that "it is never appropriate to provide bilateral mastectomy with chest wall recontouring surgery on individuals diagnosed with gender dysphoria," as set forth in Paragraph 40 of Your Declaration.

56. All Documents that support Your assertion in the publication "*Gender Dysphoria and Children: An Endocrinologist's Evaluation of "I am Jazz"*" identified in Exhibit A of Your Declaration, that gender dysphoria "is a psychological condition, rather than a biological one."

57. All Documents regarding or expressing Your opinion on whether gender-affirming surgical procedures can be effective in treating Gender Dysphoria, from January 1, 2017 to the present.

58. All Documents regarding or expressing Your opinion on whether gender-affirming surgical procedures can be effective in treating Gender Dysphoria in adolescents, from January 1, 2017 to the present.

59. All Documents regarding or expressing Your opinions or recommendations regarding health benefit coverage exclusions for treatment of Gender Dysphoria, whether in a commercial or non-commercial context, from January 1, 2017 to the present.

60. All Documents regarding or expressing Your opinions or recommendations regarding health benefit coverage exclusions for gender-affirming surgery for treating Gender Dysphoria, whether in a commercial or non-commercial context, from January 1, 2017 to the present.