Anthony J. Fernandez (Bar No. 018342)
Pierce Sargeant (Bar No. 027457)
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
8800 East Raintree Drive, Suite 100
Scottsdale, Arizona 85260
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
pierce.sargeant@qpwblaw.com
*Attorneys for Non-Party El Rio Health*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D.H., by and through his mother, Janice Hennessy-Waller; and John Doe, by and through his guardian and next friend, Susan Doe, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Jami Snyder, Director of the Arizona Health Care Cost Containment System, in her official capacity<br><br>Defendants. | Case No.: 4:20-cv-00335-SHR<br><br>**NON-PARTY EL RIO HEALTH'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL PRODUCTION** |

Non-party El Rio Health ("El Rio"), through undersigned counsel, hereby appears for the sole purpose of contesting matters related to the Subpoena Duces Tecum served on it and makes a limited appearance to file it's a Response to the Motion to Compel Production filed by Defendant Jami Synder, Director of the Arizona Health Care Cost Containment System ("AHCCCS"), and responds as follows:

### I.     BACKGROUND

On or about May 6, 2021, Non-Party El Rio Health was served with a subpoena requesting production of "[a]ll documents or other evidence that support the assertion by Dr. Andrew Cronyn that of the transgender patients at El Rio Health Center 'ranging from four to twenty-one" years old, 'more than forty of those patients are transgender boys who receive their health insurance coverage through AHCCCS and need male chest

1 reconstruction surgery.'" El Rio responded to the subpoena instructing Defendant that the
2 request lacks any meaningful way to search El Rio's database, specifically pointing to the
3 overly compound nature of the request and its request to identify the subjective
4 determinations of Dr. Cronyn. El Rio, by and through counsel, consistently and extensively
5 engaged with counsel for Defendant regarding the deficiencies, the limitations, the burdens,
6 other sources, and the privileges, protections, and potential for liability as a result the Health
7 Insurance Portability and Accountability Act of 1996 ("HIPAA") being thrust upon El Rio.
8 Despite the discussions, Defendant ignored each and filed a Motion to Compel Production.

9     Dr. Cronyn's avows that his "professional opinion of D.H. is based on my in-person
10 assessments of his health as well as a review of prior medical records, including notes from
11 his previous primary care doctor, Dr. Arianna Foster, who had been seeing him since 2016,
12 and his pediatric endocrinologist, Dr. Cindy Chin, who had been seeing him since 2017."
13 Similarly, Dr. Cronyn's assertions that more than forty patients at El Rio receiving
14 insurance coverage through AHCCCS need male chest reconstruction surgery is based on
15 his professional opinion based on in-person assessments, and review of prior medical notes,
16 including notes from previous primary care providers and others. As a result, the subpoena
17 tasks El Rio with identifying information which is not contained in its database, and, with
18 identifying patients based on individual discussions between patients and their providers,
19 which may or may not have occurred, placing El Rio in an impossible situation. The
20 subpoena request is not just a simple request to search its database for specific information
21 contained therein, and as a result the only response is nothing responsive.

22    **II.    LEGAL ARGUMENT**

23       **a.    Subpoena Calls for Verification of Subjective Opinions**

24     Defendant's request ignores the complications resulting from there being no agreed
25 upon protocols for male chest reconstruction surgery (i.e. prerequisites), the other available
26 treatment options which may be more appropriate for a specific patient (e.g. puberty
27 blockers), the difficulties with identifying a patient's payor (e.g. AHCCCS), and the failure
28 to identify codes or diagnoses related to Dr. Cronyn's stated reasons of the need (e.g.

2

binding). There is simply no objective way to comply with the subpoena request. As such, El Rio appropriately responded to the Subpoena by identifying the lack of a searchable identifier and satisfied it obligation by meeting the substance of the subpoena. Dissatisfaction, alone, is not a basis to move to compel when the responding party labors to outline the deficiencies of the request and undertakes to provide a reasonable and meaningful response.

**b.     HIPAA Privacy Rule**

The Standards for Privacy of Individually Identifiable Health Information ("Privacy Rule") establishes, for the first time, a set of national standards for the protection of certain health information. The U.S. Department of Health and Human Services ("HHS") issued the Privacy Rule to implement the requirement of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Pub. L. 104-191.  The Privacy Rule standards address the use and disclosure of individuals' health information—called "protected health information" by organizations subject to the Privacy Rule — called "covered entities," as well as standards for individuals' privacy rights to understand and control how their health information is used. Within HHS, the Office for Civil Rights ("OCR") has responsibility for implementing and enforcing the Privacy Rule with respect to voluntary compliance activities and civil money penalties.

In order to comply with the Privacy Rule, entities must develop and implement policies and procedures that restrict access and uses of protected health information based on the specific roles of the members of their workforce. These policies and procedures must identify the persons, or classes of persons, in the workforce who need access to protected health information to carry out their duties, the categories of protected health information to which access is needed, and any conditions under which they need the information to do their jobs. A covered entity must maintain reasonable and appropriate administrative, technical, and physical safeguards to prevent intentional or unintentional use or disclosure of protected health information in violation of the Privacy Rule and to limit its incidental use and disclosure pursuant to otherwise permitted or required use or disclosure. 45 C.F.R.

§ 164.530(c). El Rio has such policies and procedures which restrict access and provide data safeguards by limiting what information is contained in its database, and thus limiting the information available.

A covered entity may determine that health information is not individually identifiable health information only if: (1) a person with appropriate knowledge of and experience with generally accepted statistical and scientific principles and methods for rendering information not individually identifiable: (i) applying such principles and methods, determines that the risk is very small that the information could be used, alone or in combination with other reasonably available information, by an anticipated recipient to identify an individual who is a subject of the information; and (ii) documents the methods and results of the analysis that justify such determination; or (2)(i) the enumerated identifiers of the individual or of relatives, employers, or household members of the individual, are removed. The covered entity must not have actual knowledge that the information could be used alone or in combination with other information to identify an individual who is a subject of the information. 45 C.F.R. § 164.514. Disclosure of a code or other means of record identification designed to enable coded or otherwise de-identified information to be re-identified constitutes disclosure of protected health information. 45 C.F.R. § 164.502.

### i. Minimum Necessary Rule

A central aspect of the Privacy Rule is the principle of "minimum necessary" use and disclosure. A covered entity must make reasonable efforts to use, disclose, and request only the minimum amount of protected health information needed to accomplish the intended purpose of the use, disclosure, or request. A covered entity must develop and implement policies and procedures to reasonably limit uses and disclosures to the minimum necessary. When applying the minimum necessary standard to a use or disclosure, a covered entity must limit uses and disclosure to only that which is reasonably needed. 45 C.F.R. §§ 164.502(b) and 164.514 (d). El Rio sought to meet the substance of the request through its

written response and was in compliance with the Minimum Necessary Rule by looking at the intended purpose of the request as defined by Defendant in the subpoena.

The subpoena request of Defendant is an overly compound request which obfuscates the distinction between the identification of specific records and the subjective determinations by a patient's primary care provider. The subpoena request is broad in nature, not narrowly tailored in any meaningful way despite an ability to be narrowly tailored by Defendant undertaking its own efforts to narrow the request to what is necessary and reasonable. More to the point, Defendant should query Dr. Cronyn about the specific medical information which lead to the opinion of a patient's "need" to undergo male chest reconstruction before making unreasonable requests for broad and wide ranging information in reference to all transgender males between the ages of 4 and 21 patient files. Defendant's subpoena is tasking a non-party with having to conduct in-person consultations to evaluate the unique needs of each patient after full review all prior medical records and notes, and disclose the same; this is simply not feasible or appropriate, especially in light of the Minimum Necessary Rule.

### c. Imposition of Undue Burden

The request requires a significant undertaking by El Rio, expense, and assumption of liability, while ignoring the subjective elements of the request undoubtedly resulting in multiple and inconsistent conclusions influenced by individual experience and bias. Pursuant to Federal Rules of Civil Procedure Rule 45 the party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1).

The Court must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance. Fed. R. Civ. P. 45(d)(2)(B)(ii). "The plain language of the provision suggests that sanctions may be imposed when a subpoenaing attorney unfairly harms a subpoena recipient by acting carelessly or in bad faith while issuing and serving a subpoena." *Mount Hope Church v. Bash Back*, 705 F.3d 418, 425 (9th Cir. 2012). The Courts have oft said things like: "[i]t is also noteworthy that the

respondents are strangers to the . . . . litigation; insofar as . . . they have no dog in that fight. Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st. Cir. 1998).

It might be an undue burden to compel an adversary to attend trial as a witness if [they] are known to have no personal knowledge of matters in dispute, especially if [they] would be required to incur substantial travel burdens." Fed.R.Civ.P. 45(c)(3)(A)(iv) advisory committee's note. Under this example, the burdens of complying with the subpoena are the ones that count. Here, Defendant is attempting to compel Non-Party El Rio, an entity with no personal knowledge of matters in dispute, to incur substantial burdens to recreate information in an attempt to confirm or dispel the opinions of Dr. Cronyn.

Defendant's Motion to Compel asserts that Defendant has labored and undertaken every effort to obtain this information yet described none beyond asking Dr. Cronyn and subpoenaing El Rio. At a minimum, Dr. Cronyn identified other treating physicians which may have relevant knowledge and which may produce relevant information. Moreover, Defendant has not made any attempts to engage Dr. Cronyn beyond the declaration he submitted by way of subsequent requests of him to identify additional information which may assist in the identification of specific records that relate to Dr. Cronyn's assertions and professional opinions.

Counsel for El Rio undertook to attempt to meet and confer with counsel for Defendant prior to the filing a response. Requests for counsel to describe additional undertakings Defendant attempted in this litigation provided no additional items to those outlined above.

### d. No Assurances of Notice and Opportunity to Object Provided

A covered entity must obtain the individual's written authorization for any use or disclosure of protected health information that is not for treatment, payment or health care

operations or otherwise permitted or required by the Privacy Rule. 45 C.F.R. § 164.508. Absent written authorization of the individual, a covered entity may disclose protected health information in the course of any judicial proceeding in response to a subpoena if: (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.  45 CFR § 164.512(e).  A qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that: (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.  *Id*.

   A covered entity receives satisfactory assurances from a party seeking protected health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that: (A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address); (B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and (C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and: (1) No objections were filed; or (2)

All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution. *Id*.

A covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that: (A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or (B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal. *Id*.

Defendant has provided none of the assurances and places all of the burdens on El Rio to not only subjectively identify patients but also, ignoring the issues noted above, to provide notice to those identified. A lack of assurances of notice violate the rules.

### e.   Privilege

Lastly, El Rio does expressly object and assert protection pursuant to privilege and confidentiality of medical information protected under state and federal Medical Right to Privacy laws, including but not limited to Health Information Portability and Accountability Act (HIPAA), and all corresponding privileges and confidentially pertaining to patient's medical chart, medical history, doctor-patient communications, and individual patient treatment and examination, and asserts all protections afforded to patient's related to the right to notice, object, and due process under the law. To the extent the request is read to mean provide full patient files, unredacted or otherwise, the Court must order that they are privileged and not subject to disclosure. Any other result would violate the Constitution, Federal and State law, and the relevant privileges afforded under the Federal Rules of Evidence.

### III.   CONCLUSION

The subpoena to Non-Party El Rio Health requests information which is not otherwise contained in a database. As a result, the subpoena imposes and undue burden on El Rio Health to undertake significant acts to attempt a response, responses which can vary

significantly, all while Defendant refuses to attempt to undertake reviews of its own records or conduct additional discovery in an attempt to refine or narrow the field of the request. Moreover, the response provided by El Rio Health met the substance of the request and defined by Defendant pursuant to the Minimum Necessary Rule. Defendant has provided no satisfactory assurances of notice nor has Defendant sought a protective order or provided any draft thereof.

WHEREBY, Non-party El Rio Health requests the Court to DENY Defendant's Motion to Compel Production, acknowledge the response as satisfying all obligations resulting from the subpoena, and recognize the burdens being imposed on a non-party as a result of the continued request.

RESPECTFULLY SUBMITTED this 27th day of July, 2021.

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

By:   /s/Anthony J. Fernandez
Anthony J. Fernandez
Pierce Sargeant
*Attorneys for Responding Party*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2021, I electronically transmitted the foregoing document, using the ECF System for filing and transmittal of a Notice of Electronic Filing and to ECF registrants and e-mailed a copy of the foregoing to the following:

Brent P. Ray
Andrew J. Chinsky
KING & SPALING LLP
353 N. Clark Street, 12th Floor
Chicago, Illinois 60654
Tbray@kslaw.com
achinsky@kslaw.com

Daniel C. Barr
Janet M. Howe
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
dbarr@perkinscoie.com
jhowe@perkinscoie.com

Asaf Orr
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 3790
San Francisco, California 84102
aorr@nclrights.org

Abigail K. Coursolle
Catherine McKee
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Boulevard, Suite 750
Los Angeles, California 90010
coursolle@healthlaw.org
mckee@healthlaw.org
*Attorneys for Plaintiffs and the Class*

Logan T. Johnston
JOHNSTON LAW OFFICES PLC
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022
ltjohnston@live.com

David T. Burton
Burns Barton PLC
2201 E. Camelback Rd., Suite 360
david@burnsbaron.com
*Attorneys for Defendant*

By: */s/Barbara McKinley*